IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

<table>
<tr><td>————————————————x</td><td></td></tr>
<tr><td>In re:</td><td>:</td><td>Chapter 11</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>MEDICOR LTD., <em>et al.,</em></td><td>:</td><td>Case No. 07-10877 (MFW)</td></tr>
<tr><td></td><td>:</td><td>(Jointly Administered)</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>Debtors.</td><td>:</td><td></td></tr>
<tr><td>————————————————x</td><td></td><td><strong>Re: Docket No.: 502</strong></td></tr>
</table>

## NOTICE OF APPEAL

PLEASE TAKE NOTICE that Larry L. Bertsch, court-appointed receiver (the "Receiver") of Southwest Exchange, Inc. ("Southwest"); Blackstone Limited, LLC ("Blackstone"); International Integrated Industries, LLC ("III"); and certain other entities,[1] by and through his undersigned counsel, hereby appeals under 28 U.S.C. § 158(a)(1), Fed. R. Bankr. P. 8002 and Del.Bankr.LR 8001-1 to the United States District Court for the District of Delaware from the Order (i) Approving Asset Purchase Agreement and Transfer Agreement and Authorizing the Debtors to Sell Their Assets Outside the Ordinary Course of Business, Free and Clear of All Liens, Claims, Encumbrances and Interests, (ii) Authorizing the Debtors to Take Such Actions as are Necessary to Cause and Direct Certain of Their Non-Debtor Foreign Subsidiaries to Sell

---

1 The other entities covered by the receivership are Sirius Capital, LLC, Capital Reef Management Corp., NexGen Management, Inc., Americade, LLC, Global Aviation Delaware, LLC, McGhan Development Corp., Global Asset Management, West Vegas, LP, Bianathar, LLC, Trinity Star Ventures, LLC, and Ventana Coast, LLC.

Their Assets, and (iii) Granting Related Relief entered on April 23, 2008 (the "Order") [Docket No. 502].[2] A copy of the Order is attached hereto as Exhibit "1."

The names of the parties to this appeal and the names, addresses and telephone numbers of the attorneys for the parties to this appeal are as follows:

| **PARTY** | **ATTORNEY OF RECORD** |
|---|---|
| **Debtors:**<br><br>**MediCor Ltd.,** *et al.* | Victoria Counihan, Esq.<br>Dennis Meloro, Esq.<br>Greenberg Traurig LLP<br>The Nemours Building<br>1007 N. Orange Street, Ste. 1200<br>Wilmington, DE 19801<br>T:  (302) 661-7000<br><br>Jeffrey Prol, Esq.<br>Jeffrey Kramer, Esq.<br>Lowenstein Sandler PC<br>65 Livingston Avenue<br>Roseland, NJ 07068<br>T:  (973) 597-2490 |

---

2  The Receiver does not appeal the Order insofar as it approves, authorizes, and directs (a) the proposed sales of the PMA-Related Assets, the Eurosilicone Business, and the Biosil Business, (b) the proposed transfer of the Eurosilicone Intellectual Property, (c) the application, use and escrow of sale proceeds of the PMA-Related Assets and the Biosil Business, (d) the application and use of sale proceeds of the Eurosilicone Business to pay the reasonable direct costs and expenses of the transaction, costs of the liquidation of ES Holdings, all amounts due and payable by ES Holdings to BNP Paribas, and amounts due the Secured Lender Group from Eurosilicone under the note in the original principal sum of $700,000, and (e) the escrow of the balance of sale proceeds of the Eurosilicone Business.  The Receiver's appeal is limited to those provisions of the Order that approve, authorize and direct the application and use of sale proceeds of the Eurosilicone Business to pay amounts outstanding under the Debtors' debtor-in-possession financing facility of approximately $2,400,000, together with interest thereon, to pay amounts due to the Secured Lender Group from ES Holdings under notes in the original aggregate principal sum of $3,500,000, and to pay the claim of any other creditor of ES Holdings which is not required to be paid by the terms of the Eurosilicone Agreement.

**Larry L. Bertsch, Receiver**

Francis A. Monaco Jr., Esq.
Kevin J. Mangan, Esq.
Womble Carlyle Sandridge & Rice, PLLC
222 Delaware Avenue, Ste. 1501
Wilmington, DE 19801
T: 302-252-4320

William B. Sullivan, Esq.
Philip J. Mohr,, Esq.
One West Fourth Street
Winston-Salem, NC 27101
T: (336) 721-3506

**Silver Oak Capital, L.L.C.**

Pauline K. Morgan, Esq.
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, De 19899
T: (302) 571-6600

Kelley A. Cornish, Esq.
Diane Meyers, Esq.
Paul Weiss Rifkind Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
T: (212) 373-3000

**Official Committee of Unsecured
Creditors**

David W. Carickhoff, Esq.
Blank Rome LLP
1201 Market Street, Ste. 800
Wilmington, DE 19801
T:  (302) 425-6400

Michael Z. Brownstein, Esq.
Blank Rome LLP
The Chrysler Buildings
405 Lexington Avenue
New York, NY 10174
T:  (212) 885-5000

Michael B. Schaedle, Esq.
Blank Rome LLP
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
T:  (215) 569-5500

**Office of the United States Trustee**

Jane M. Leamy, Esq.
Office of the United States Trustee
844 King Street, 2nd Floor
Wilmington, DE 19801
T:  302-573-6491

Dated: Wilmington, Delaware
    May 2 , 2008

Francis A. Monaco, Jr. (#2078)
Kevin J. Mangan (#3810)
222 Delaware Avenue, Suite 1501
Wilmington, DE  19801
Tel.: (302) 252-4363
Fax:  (302) 661-7728

William B. Sullivan (NC Bar No. 17758)
Philip J. Mohr (NC Bar No. 24427)
One West Fourth Street
Winston-Salem, NC 27101
Tel.:  (336) 721-3506
Fax:  (336) 733-8365

Counsel for Larry L. Bertsch

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MEDICOR LTD., et al.[1] | ) | Case No. 07-10877 (MFW) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Ref. Docket No. 431** |

**ORDER (I) APPROVING ASSET PURCHASE AGREEMENT AND TRANSFER
AGREEMENT AND AUTHORIZING THE DEBTORS TO SELL THEIR ASSETS
OUTSIDE THE ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF ALL
LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS, (II) AUTHORIZING THE
DEBTORS TO TAKE SUCH ACTIONS AS ARE NECESSARY TO CAUSE AND
DIRECT CERTAIN OF THEIR NON-DEBTOR FOREIGN SUBSIDIARIES TO SELL
THEIR ASSETS, AND (III) GRANTING RELATED RELIEF**

Upon the motion, dated March 24, 2008 (the "Sale Motion"), of the above-captioned debtors and debtors-in-possession (the "Debtors"), for the entry of an order pursuant to Sections 105(a) and 363 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" and each individually, a "Bankruptcy Rule") (A) authorizing MediCor Development Company ("MDC"), one of the Debtors in these chapter 11 cases, to sell all or substantially all of its assets (the "PMA-Related Assets")[2], (B) authorizing Intellectual Property International, Inc. ("IPI"), one of the Debtors in these chapter 11 cases, to transfer certain intellectual property (the "Eurosilicone Intellectual Property") related to non-debtor indirect subsidiary Eurosilicone SAS ("Eurosilicone") to Eurosilicone (hereinafter, referred to in its capacity as transferee of the Eurosilicone Intellectual Property, as the "IP Transferee"), (C) authorizing the Debtors to cause and direct MediCor Europe Holdings ApS ("MediCor Europe"), a non-debtor direct wholly-

---

[1]   The Debtors are MediCor Ltd., International Integrated Incorporated, International Integrated USA Incorporated, MediCor Management, Inc., MediCor Development Company, MediCor Aesthetics, III Acquisition Corporation d/b/a PIP.America, and Intellectual Property International, Inc.

[2]   Terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

owned subsidiary of MediCor Ltd. ("MediCor"), to direct its non-debtor wholly-owned subsidiary, ES Holdings SAS ("ES Holdings") to sell its equity interest, stock, and related equity securities of Eurosilicone (the "Eurosilicone Business"), (D) authorizing the Debtors to cause and direct Biosil UK Ltd. ("Biosil UK"), a non-debtor direct wholly-owned subsidiary of MediCor, to sell its equity interests, stock and related equity securities in Biosil Ltd. and Nagor Ltd. (the "Biosil Business")[3], and (E) granting related relief; and the Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. Sections 157(b)(2) and 1334; and after due consideration of the Sale Motion, the relief requested therein, and the responses thereto, including the limited objection of the Official Committee of Unsecured Creditors (the "Committee"), the limited objection of Larry L. Bertsch, in his capacity as receiver for Southwest Exchange, Inc., et al. (the "Receiver"), and the objection of William Large and Susan Large; and the Receiver having filed a complaint on April 9, 2008, in the Court of Commerce in Paris, France (the "Court of Commerce"), seeking the entry of an order on an expedited basis directing that the proceeds of the sale of the Eurosilicone Business be held in escrow on behalf of ES Holdings in France; and it appearing that at a hearing held on April 14, 2008, the Court of Commerce denied the relief requested by the Receiver and dismissed the Receiver's complaint as provided in the Court of Commerce Order in Emergency Proceedings Rendered on Monday, April 14, 2008; and it appearing that the Sale Motion is a core proceeding in accordance with 28 U.S.C. Section 157(b); and the appearance of all interested parties and all responses and objections to the Sale Motion having been duly noted in the record of the hearing on the Sale Motion ("Sale Hearing"); and upon the record of the Sale Hearing, and all other pleadings and proceedings in this case, including the Sale Motion; and it appearing that the Committee has reached an agreement in principle with the Debtors and Silver Oak Capital, LLC (in its capacity as agent on behalf of itself and certain other lenders) resolving various claims and causes of action subject to certain conditions, which settlement is in the process of being

---

[3]    The Eurosilicone Business and the Biosil Business are hereinafter collectively referred to as the "Non-Debtor Assets".

documented and is subject to approval by the Court, with all parties in interest reserving their rights to object to the settlement; and it further appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefore; and it appearing that (A) MDC has entered into an asset purchase agreement with Global Consolidated Aesthetics (US) Corp. (the "PMA Buyer") for the sale of the PMA-Related Assets (the "PMA Agreement"), (B) IPI has entered into a transfer agreement with Eurosilicone for the transfer of the Eurosilicone Intellectual Property (the "Intellectual Property Transfer Agreement"), (C) ES Holdings has entered into a share purchase agreement (the "Eurosilicone Agreement") with Global Consolidated Aesthetics France SAS (the "Eurosilicone Buyer") for the sale of the Eurosilicone Business, (D) Biosil UK has entered into a share purchase agreement (the "Biosil Agreement") with Global Consolidated Aesthetics UK Ltd. (the "Biosil Buyer") for the sale of the Biosil Ltd. portion of the Biosil Business, (E) Biosil UK has entered into a share purchase agreement (the "Nagor Agreement") with Global Consolidated Aesthetics Holdings Ltd. (the "Nagor Buyer") for the Nagor Ltd. portion of the Biosil Business (the PMA Buyer, the Eurosilicone Buyer, the Biosil Buyer and the Nagor Buyer may hereinafter be collectively referred to as the "Buyers", and the PMA Agreement, the Eurosilicone Agreement, the Biosil Agreement, and the Nagor Agreement may hereinafter be collectively referred to as the "Purchase Agreements"), and (F) MediCor has entered into an escrow agreement with Global Consolidated Aesthetics, Ltd. dated December 7, 2007, pursuant to which Global Consolidated Aesthetics, Ltd. deposited $5,150,000 (the "Deposit") into escrow with Lowenstein Sandler, PC as a deposit against the purchase price of the PMA-Related Assets and the Non-Debtor Assets (the "Escrow Agreement").

### IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.     To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.     As evidenced by the Affidavits of Service filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion and the Sale Hearing have been provided in accordance with Sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006, 9007 and 9014, and the local rules of this Court.  No other or further notice of the Sale Motion, the Sale Hearing, or of the entry of this Order is necessary.

D.     A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities, including, without limitation, (i) the United States Trustee for the District of Delaware, (ii) counsel for the Committee, (iii) counsel for the Secured Lenders, (iv) counsel to the Receiver, (v) all entities who claim any interest in or lien upon the PMA-Related Assets or the Eurosilicone Intellectual Property, (vi) federal, state and local regulatory authorities (including taxing authorities) with jurisdiction over the Debtors, (vii) all parties who filed requests for notice under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002, (viii) all creditors (whether liquidated, contingent or unmatured) of the Debtors, (ix) all entities known to have expressed a *bona fide* interest in acquiring the assets being sold, (x) the office of the United States Attorney for the District of Delaware, and (xi) the United States Attorney General.

E.     The Sale Motion was duly and properly served on all required persons and entities.

-4-

F.       The PMA-Related Assets and the Eurosilicone Intellectual Property are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

G.       The Non-Debtor Assets, and the shares of ES Holdings, Eurosilicone, Biosil, Ltd. and Nagor Ltd. are not property of the Debtors' estates.

H.       The Debtors have demonstrated a sufficient basis and the existence of exigent circumstances requiring them to sell the PMA-Related Assets, to transfer the Eurosilicone Intellectual Property, and to cause and direct MediCor Europe and Biosil UK to sell their assets, and such actions are appropriate exercises of the Debtors' business judgment and in the best interest of the Debtors, their estates and their creditors.

I.       The offer of the PMA Buyer to purchase the PMA-Related Assets is the highest and best offer received by the Debtors and the purchase price set forth in the PMA Agreement is fair, is in the best interests of the Debtors' estates, and constitutes fair consideration and reasonably equivalent value for the PMA-Related Assets. The transfer of the Eurosilicone Intellectual Property is in the best interests of the Debtors' estates.

J.       Without an expeditious sale of the PMA-Related Assets, transfer of the Eurosilicone Intellectual Property, and sale of the Non-Debtor Assets, there will be a substantial diminution in the value of the Debtors and their assets to the detriment of their creditors and other parties-in-interest.

K.       The PMA Buyer is not an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code. The PMA Buyer is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of Section 363(m) of the Bankruptcy Code. Neither the Debtors nor the PMA Buyer have engaged in any conduct that would prevent the application of Section 363(m) of the Bankruptcy Code or cause the application of Section 363(n) to the PMA Agreement.

-5-

L.      The Debtors have full corporate power and authority to execute the PMA Agreement, the Intellectual Property Transfer Agreement and all other documents contemplated thereby, and the sale of the PMA-Related Assets and the Eurosilicone Intellectual Property have been duly and validly authorized by all necessary corporate authority. No consents or approvals, other than as may be expressly provided for in the PMA Agreement or the Intellectual Property Transfer Agreement, are required by the Debtors to consummate such transactions.

M.      The Debtors have advanced sound business reasons for seeking to enter into the PMA Agreement to sell the PMA-Related Assets, to enter into the Intellectual Property Transfer Agreement to transfer the Eurosilicone Intellectual Property, and to cause and direct MediCor Europe and Biosil UK to sell their assets, as more fully set forth in the Sale Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtors' business judgment to sell the PMA-Related Assets, transfer the Eurosilicone Intellectual Property, and cause and direct the Non-Debtor Assets to be sold.

N.      The terms and conditions of the PMA Agreement and the Intellectual Property Transfer Agreement, including the consideration to be realized pursuant to the PMA Agreement and the Intellectual Property Transfer Agreement, is fair and reasonable, and the transactions contemplated by the PMA Agreement and the Intellectual Property Transfer Agreement are in the best interests of the Debtors' estates.

O.      The Debtors may sell the PMA-Related Assets free and clear of all liens, claims, interests and encumbrances because, with respect to each creditor asserting a lien, claim, interest or encumbrance, one or more of the standards delineated in Bankruptcy Code Section 363(f)(1)-(5) have been satisfied.

P.      Silver Oak Capital, LLC, as agent on behalf of itself and certain other lenders (the "Secured Lender Group"), asserts a valid, perfected, enforceable and first priority security interest in all of the Debtors' assets, including the stock of MediCor Europe and Biosil

UK (the "Stock Pledges") and any inter-company receivables due to MediCor from ES Holdings, MediCor Europe or Biosil UK (the "Inter-Company Receivables"). The Secured Lender Group has consented to the relief requested in the Motion on the terms and conditions set forth herein.

Q.    The Receiver has asserted certain claims with respect to the Eurosilicone Business in the adversary proceedings entitled <u>Bertsch v. MediCor, Ltd. et al.</u> (Adv. Pro. 07-51806-MFW) and <u>Bertsch v. MediCor, Ltd., et al.</u> (Adv. Pro. 08-50597-MFW) pending before this Court (collectively, the "Receiver's Adversary Proceeding"), including claims for the imposition of a trust over the stock of Eurosilicone and allegedly challenges the validity and extent of Lenders' alleged security interests and liens in an alleged intercompany loan contract and intercompany receivable between MediCor and ES Holdings, as described therein.

R.    Pursuant to the Final DIP Order, the Committee has retained the right to assert certain estate claims and causes of action against the Secured Lender Group. In light of the settlement in principle reached by and among the Debtors, the Committee and the Secured Lender Group, which will provide a substantial benefit to unsecured creditors and which will resolve certain potential claims and causes of action of the Committee against the Secured Lender Group under certain circumstances, the Committee has consented to the relief requested in the Motion on the terms set forth herein. The settlement is not approved by this Order and all parties in interest reserve their rights to object to the settlement.

S.    In the absence of a stay pending appeal, the PMA Buyer will be acting in good faith, pursuant to Section 363(m) of the Bankruptcy Code, in closing the transactions contemplated, respectively, by the PMA Agreement at any time on or after the entry of this Order and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h).

T.    The sale of the PMA-Related Assets and the transfer of the Eurosilicone Intellectual Property outside of a plan of reorganization pursuant to the PMA Agreements and

-7-

the Intellectual Property Transfer Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The sale does not constitute a *sub rosa* chapter 11 plan.

U.      The total consideration provided by the Buyers for the PMA-Related Assets and the Eurosilicone Intellectual Property is the highest and best offer received by the Debtors, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the PMA-Related Assets and the Eurosilicone Intellectual Property.

V.      Time is of the essence in consummating the sale of the PMA-Related Assets and the transfer of the Eurosilicone Intellectual Property. In order to maximize the value of the Debtors' estates, it is essential that the sale of the PMA-Related Assets and the transfer of the Eurosilicone Intellectual Property occur within the time constraints set forth in the Purchase Agreements. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rule 6004(h).

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The relief requested in the Sale Motion is granted as stated on the record of, and based on the Court's stated factual findings and conclusions of law at, the hearing and as set forth in this Order.

2.      All objections, responses and requests for continuance concerning the Sale Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing. To the extent any such objection, response or request for continuance was not

otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied.

3.    The PMA Agreement and the Intellectual Property Transfer Agreement (including all schedules and exhibits affixed thereto) and the transactions contemplated thereby be, and hereby are, approved.

4.    MDC be, and hereby is, authorized and empowered and directed to enter into, and to perform its obligations under, the PMA Agreement and to execute and perform such agreements or documents and take such other actions as are necessary or desirable to effectuate the terms of the PMA Agreement. IPI be, and hereby is, authorized and empowered and directed to enter into, and to perform its obligations under, the Intellectual Property Transfer Agreement and to execute and perform such agreements or documents and take such other actions as are necessary or desirable to effectuate the terms of the Intellectual Property Transfer Agreement. The Debtors be, and hereby are, authorized and directed to cause and direct MediCor Europe to direct ES Holdings to enter into, and perform its obligations under, the Eurosilicone Agreement. The Debtors be, and hereby are, authorized and directed to cause and direct Biosil UK to enter into, and perform its obligations under, the Biosil Agreement and the Nagor Agreement.  The parties shall have no obligation to proceed with the closing of the PMA Agreement or the Intellectual Property Transfer Agreement until all conditions precedent to their respective obligations to do so have been met, satisfied or waived.

5.    The Debtors shall be, and hereby are, authorized, empowered, and directed, pursuant to Sections 105 and 363(b) of the Bankruptcy Code, to sell the PMA-Related Assets to the PMA Buyer and to transfer the Eurosilicone Intellectual Property to the IP Transferee. The sale of the PMA-Related Assets and the transfer of the Eurosilicone Intellectual Property shall be free and clear of any and all liens, claims, interests or encumbrances and other liabilities and claims, whether secured or unsecured, choate or inchoate, filed or unfiled,

-9-

scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise, with all such liens, claims, interests or encumbrances to attach only to the proceeds of the sale with the same priority, validity, force and effect, if any, as they now have in or against the PMA-Related Assets or the Eurosilicone Intellectual Property, subject to: (i) all claims, rights and defenses the Debtors, the Secured Lender Group, the Committee, the Receiver, creditors and others in parties-in-interest may possess with respect thereto (subject to the terms and conditions of the Final DIP order to the extent applicable); and (ii) the terms and conditions of the Final DIP Order.

6.      On consent of the Secured Lender Group, the sale of the Biosil Business shall be free and clear of all liens, claims, interests and encumbrances of the Secured Lender Group and such liens, claims, interests and encumbrances shall attach to the proceeds of the sale of the Biosil Business with the same priority, validity, force and effect, if any, as they now have in or against the Biosil Business, Biosil UK, the Stock Pledges or any Inter-Company Receivables with respect to the Biosil Business or Biosil UK; subject to: (i) all claims, rights and defenses otherwise available to the Debtors, the Committee, creditors or any other party in interest with respect thereto (subject to the terms and conditions of the Final DIP order to the extent applicable); and (ii) the terms and conditions of the Final DIP Order.  The gross sale proceeds attributable to the sale of the Biosil Business shall be applied, without further order of the Court, to pay the following: (a) $6 million to the prior owners of Biosil and Nagor in accordance with the Alsop Settlement Agreement, (b) the claims of creditors of Biosil UK (other than the Inter-Company Receivables), if any, (c) the direct costs and expenses of the transaction, and (d) amounts outstanding under the Debtors' debtor-in-possession financing facility[4] (the

---

[4]      An estimate of expenses required to be paid pursuant to subparagraphs 6(a) through 6(d) is set forth on Exhibit A annexed hereto.

DEL 86,214,053v9

"Biosil Carve-Out"), with the balance of said proceeds to be held in escrow by Lowenstein Sandler PC pending further order of the Court (the "Biosil Escrow") or as provided in paragraph 9 below, in each case, subject to the claims, rights and defenses of the Debtors, the Secured Lender Group, and the Committee hereunder (subject to the terms and conditions of the Final DIP Order to the extent applicable) and/or under the Final DIP Order. The payment of the Biosil Carve-Out shall not be subject to disgorgement or further challenge.

        7.     On consent of the Secured Lender Group, the sale of the Eurosilicone Business shall be free and clear of all liens, claims, interests and encumbrances of the Secured Lender Group (the "Lender Claims") and such liens, claims, interests and encumbrances shall attach to the proceeds of the sale of the Eurosilicone Business; provided that the Lender Claims shall attach to the proceeds of the sale of the Eurosilicone Business with the same priority, validity, force and effect, if any, as they now have in or against the Eurosilicone Business, the Stock Pledges or any Intercompany Receivables with respect to the Eurosilicone Business, Eurosilicone, MediCor Europe or ES Holdings, subject to (i) all claims, rights and defenses the Debtors, the Committee, the Receiver, creditors or any other party in interest may possess with respect thereto (subject to the terms and conditions of the Final DIP Order to the extent applicable); and (ii) the terms and conditions of the Final DIP Order. The gross sale proceeds attributable to the sale of the Eurosilicone Business shall be applied, without further order of the Court, to pay the following: (a) the direct costs and expenses of the transaction; (b) the costs of liquidation of ES Holdings; (c) the claims of creditors of ES Holdings, including all amounts due and payable by ES Holdings to BNP Paribas; (d) amounts outstanding under the Debtors' debtor-in-possession financing facility that were advanced to make payments due and owing from ES Holdings to BNP Paribas during the pendency of these chapter 11 cases in the approximate amount of $2,400,000, together with interest accrued thereon (such amounts, together with the amounts referenced in (e) and (f) below, the "Secured Lender Payments"); (e) amounts due to the Secured Lender Group from ES Holdings under the notes in the original aggregate principal sum

of $3,500,000 issued pursuant to the Third Amendment to Certain Transaction Documents dated as of March 30, 2007; and (f) amounts due to the Secured Lender Group from Eurosilicone under the note in the original principal sum of $700,000 issued pursuant to the First Amendment to Certain Transaction Documents dated as of January 30, 2007, together with interest accrued thereon (collectively, the "Eurosilicone Carve-Out")[5]. At least three business days prior to any distribution of the Eurosilicone Carve-Out, the Debtors will provide the Secured Lender Group, the Committee and the Receiver with a proposed estimated distribution schedule. If the actual distributions in any category or categories of distributions exceed that estimate by more than twenty percent (20%), for that category or categories, the Debtors must obtain either consent from the Secured Lender Group, the Committee and the Receiver or authorization from the Court in order to distribute the amount over the estimate. The payment of the Eurosilicone Carve-Out and priority of the Secured Lenders' claims with respect to the Secured Lender Payments shall not be subject to disgorgement or further challenge (other than a manifest error in the calculation thereof). The balance of the proceeds of the sale of the Eurosilicone Business after payment of the Eurosilicone Carve-Out shall be paid to MediCor and shall be held in escrow by Lowenstein Sandler PC pending further order of this Court (the "Eurosilicone Escrow"), subject to the rights, claims and defenses of the Debtors, the Secured Lender Group, the Committee and the Receiver hereunder (subject to the terms and conditions of the Final DIP Order to the extent applicable) and/or under the Final DIP Order.

8.     On consent of the Receiver, the sale of the Eurosilicone Business and the Biosil Business shall be free and clear of all liens, claims, interests and encumbrances of, or which have or could have been asserted by, the Receiver, including all liens, claims, interests and encumbrances asserted by the Receiver in the Receiver's Adversary Proceeding filed by the Receiver entitled Bertsch v. MediCor, Ltd. et al. (Adv. Pro. 07-51806-MFW) pending before this

---

[5]     An estimate of expenses required to be paid pursuant to subparagraphs 7(a) through 7(f) is set forth on Exhibit A annexed hereto.

Court (the "Asserted Claims"); provided that the Asserted Claims shall attach to the proceeds of the sale of the Eurosilicone Business with the same priority, validity, force and effect, if any, as they now have in or against the Eurosilicone Business; but subject to: (i) all claims, rights and defenses that the Debtors, the Secured Lender Group, the Committee, creditors or any other party in interest may possess with respect thereto (subject to the terms and conditions of the Final DIP Order to the extent applicable), (ii) the payment of the Eurosilicone Carveout and other costs of administration as provided in paragraph 9 below and (iii) the terms and conditions of the Final DIP Order.

9.     Lowenstein Sandler PC be and hereby is authorized and directed to pay the Deposit into closing for distribution in accordance with the terms of this Order, and upon the payment of the same, Lowenstein Sandler, PC is hereby released from any further duties or responsibilities with respect to the Deposit and the Escrow Agreement, the terms of which are hereby is approved.  The funds held in the Biosil Escrow shall be held by Lowenstein Sandler, PC in escrow pursuant to an escrow agreement in form and substance reasonably acceptable to the Secured Lender Group, the Receiver and the Committee, and may be used by the Debtors to fund ongoing administrative expenses incurred in these chapter 11 cases in accordance with, and subject to, the terms of, the Final DIP Order and a budget to be agreed upon by the Secured Lender Group, or upon the entry of an order of this Court on notice to the Receiver, the Committee, and other parties in interest.  The funds held in the Eurosilicone Escrow shall be held by Lowenstein Sandler, PC in escrow pursuant to an escrow agreement in form and substance reasonably acceptable to the Secured Lender Group, the Receiver and the Committee, pending further order of this Court.

10.     On or before the closing date, the Debtors' creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release any liens, claims, interests or encumbrances of any kind against the PMA-Related Assets, as such liens, claims, interests or encumbrances may have been recorded or may otherwise exist.  If any

-13-

person or entity that has filed financing statements or other documents or agreements evidencing liens, claims, interests or encumbrances on the PMA-Related Assets shall not have delivered to the Debtors prior to the closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all liens or other interests which the person or entity has with respect to the PMA-Related Assets and the PMA Buyer is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such PMA-Related Assets.

11.     Effective as of the closing, the sale of the PMA-Related Assets by the Debtors to the PMA Buyer shall constitute a legal, valid and effective transfer of the PMA-Related Assets notwithstanding any requirement for approval or consent by any person and shall vest the PMA Buyer with all right, title and interest of the Debtors in and to the PMA-Related Assets, free and clear of all liens, claims, interests or encumbrances of any kind, pursuant to Section 363(f) of the Bankruptcy Code, and any such liens, claims, interests and encumbrances shall attach to the proceeds of the sale of the PMA-Related Assets.

12.     Effective as of the closing, the transfer of the Eurosilicone Intellectual Property by the Debtors to the IP Transferee shall constitute a legal, valid and effective transfer of the Eurosilicone Intellectual Property notwithstanding any requirement for approval or consent by any person and shall vest the IP Transferee with all right, title and interest of the Debtors in and to the Eurosilicone Intellectual Property free and clear of all liens, claims, interests or encumbrances of any kind, pursuant to Section 363(f) of the Bankruptcy Code, and any such liens, claims, interests and encumbrances shall attach to the proceeds of the sale of the Eurosilicone Business.

13.     All persons or entities, presently or on or after the closing date, in possession of some or all of the PMA-Related Assets are directed to surrender possession of the PMA-Related Assets to the PMA Buyer on the closing date or at such time thereafter as the

-14-

PMA Buyer may request. All persons or entities, presently or on or after the closing date, in possession of some or all of the Eurosilicone Intellectual Property are directed to surrender possession of the Eurosilicone Intellectual Property to the IP Transferee on the closing date or at such time thereafter as the IP Transferee may request.

14.    The sale of the PMA-Related Assets and the transfer of the Eurosilicone Intellectual Property and the consideration provided by the Buyers is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

15.    The PMA Buyer is hereby granted and is entitled to all of the protections provided to a good faith buyer under Section 363(m) of the Bankruptcy Code.

16.    This Order and the PMA Agreement shall inure to the benefit of, the Debtors and the PMA Buyer and their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a chapter 7 case if these cases are converted from chapter 11.

17.    Subject to paragraph 28 of this Order, this Court shall retain jurisdiction to enforce the provisions of this Order and to resolve any dispute concerning this Order or the rights and duties of the parties hereunder or any issues relating to this Order, including, but not limited to, the interpretation of the terms, conditions, and provisions hereof, the status, nature and extent of the PMA-Related Assets and the Eurosilicone Intellectual Property and all issues and disputes arising in connection with the relief authorized herein with respect to the Debtors, the PMA-Related Assets and the Eurosilicone Intellectual Property.

18.    The provisions of this Order are non-severable and mutually dependent.

19.    Notwithstanding Bankruptcy Rules 6004(h), this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the

-15-

absence of any person or entity obtaining a stay pending appeal, the Debtors and the PMA Buyer are free to close under the PMA Agreement at any time, subject to the terms of the PMA Agreement.  In the absence of any person or entity obtaining a stay pending appeal, if the Debtors and the PMA Buyer close under the PMA Agreement, the PMA Buyer shall be deemed to be acting in "good faith" and shall be entitled to the protections of Section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the PMA Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

20.    The sale of the PMA-Related Assets approved by this Order is not subject to avoidance pursuant to Section 363(n) of the Bankruptcy Code.

21.    Pursuant to Sections 105 and 363 of the Bankruptcy Code, all creditors of the Debtors shall be barred, estopped and enjoined from taking any action of any kind against the PMA Buyer or the PMA-Related Assets on account of any liens, claims, interests or encumbrances against the Debtors, or any of the PMA-Related Assets arising prior to the closing date.

22.    Subject to the giving of prior notice to the Secured Lender Group, the Receiver and the Committee, the PMA Agreement may be modified, amended, or supplemented by agreement of the Debtors and the PMA Buyer, in accordance with the terms thereof, without further action or order of the Court; provided, however, that any such modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the terms of the PMA Agreement.

23.    The failure specifically to include any particular provisions of the PMA Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court, the Debtors and the PMA Buyer that the PMA Agreement is authorized and approved in its entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to closing.

-16-

24.    No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the sale and the transactions contemplated by the PMA Agreement.

25.    To the extent any provision of this Order conflicts with the terms and conditions of the PMA Agreement, this Order shall govern and control.

26.    For purposes of Section 363(b)(1) of the Bankruptcy Code, the Debtors have not, in connection with offering a product or service, disclosed to one or more individuals a policy prohibiting the transfer of "personally identifiable information" (as defined in 11 U.S.C. § 101(41A)) about individuals to persons that are not affiliated with the Debtors.

27.    With the exception of claims and causes of action to protect rights associated with the Eurosilicone Intellectual Property which are being transferred to the IP Transferee under the Intellectual Property Transfer Agreement, nothing in this Order or in the Purchase Agreements is intended to or shall be interpreted to authorize the sale of any claims or causes of action belonging to the Debtors or to their bankruptcy estates, including, but not limited to, claims and causes of action arising under chapter 5 of the Bankruptcy Code, and all such claims and causes of action shall be retained by the Debtors and their estates, provided, however, any claims or causes of action that the Debtors may have against Biosil Ltd., Nagor Ltd., Eurosilicone, the Biosil Business, and the Eurosilicone Business  be and hereby are extinguished and shall not be pursued by the Debtors.

28.    Nothing in this Order, including, but not limited to the consent of the Secured Lender Group, the Committee and the Receiver to the sale of the Eurosilicone Business, the establishment of the Eurosilicone Escrow or the transfer of the net proceeds of the sale of the Eurosilicone Business to Lowenstein Sandler PC  is intended to or shall in any way prejudice any rights, claims or defenses of the Debtors, the Committee, the Secured Lender Group, the Receiver, any creditor or any party in interest with respect to matters that are not the subject of this Order, including, without limitation, any rights, claims or defenses (including arguments

-17-

concerning this Court's jurisdiction or lack of jurisdiction over, or ability to fashion a remedy with respect to, the Debtors' non-debtor foreign subsidiaries and their assets and stock) of any party to the Receiver's Adversary Proceeding or any related proceeding. Nothing in this Order nor the occurrence of any of the prospective transactions and dispostions of proceeds contemplated in this Order, including the transfer of the proceeds of the sale of the Eurosilicone Business to Medicor and/or the establishment and maintenance of the Eurosilicone Escrow as provided hereunder, shall be used in any way whatsover by or against any party to the Receiver's Adversary Proceeding or any related proceeding with respect to any claims, rights, defenses, or positions (including, with respect to the Court's jurisdiction or lack thereof) that have been or may be asserted, or any issues that have arisen or may arise, in those proceedings, and shall not be admissible or referred to in any submissions to the Court in those proceedings. This paragraph 28 shall not be construed to preclude or prejudice any argument concerning jurisdictional issues in the Receiver's Adversary Proceeding based on any party's arguments or representations in the Court of Commerce or in this Court. By this Order, the Court is making no ruling that the Court has or does not have personal jurisdiction over MediCor Europe and ES Holdings. This Court, however, maintains jurisdiction over the funds held in the Eurosilicone Escrow.


Dated: Wilmington, Delaware
        April 23, 2008

_____
The Honorable Mary F. Walrath
Chief United States Bankruptcy Judge


-18-

DEL 86,214,053v9

UNITED STATES BANKRUPTCY
COURT DISTRICT OF DELAWARE

**APPEAL TRANSMITTAL SHEET**

Bankruptcy Case Number: 07-10877 (MFW)

**Title of Order Appealed**:

Order (I) Approving Asset Purchase Agreement and Transfer Agreement and Authorizing the
Debtors to Sell Their Assets Outside the Ordinary Course of Business, Free and Clear of All
Liens, Claims, Encumbrances and Interests, (II) Authorizing the Debtors to Take Such Actions as
are Necessary to Cause and Direct Certain of Their Non-Debtor Foreign Subsidiaries to Sell
Their Assets, and (III) Granting Related Relief.  Order Signed on 4/23/2008.

**Item Transmitted**:    Notice of Appeal, Docket Number 515
**Date Filed**:          May 5, 2008

**Notice of Appeal**.  Docket #515
**Appellant's Designation of Items & Statement of Issues**.   Docket #525
**Appellee's Designation of Items & Statement of Issues**.      Docket #539

| **Appellant:** | **Appellee:** |
|---|---|
| Francis A. Monaco, Jr. Esq. | Pauline K. Morgan, Esq. |
| Kevin J. Mangan, Esq. | Young Conaway Stargatt & Taylor LLP |
| Womble Carlyle Sandridge & Rice, PLLD | The Brandywine Building |
| 222 Delaware Avenue, Ste. 1501 | 1000 West Street, 17th Floor |
| Wilmington, DE 19801 | Wilmington, DE 19801 |
| Telephone: (302) 252-4320 | Telephone: (302) 571-6600 |
| -and- | -and- |
| William B. Sullivan, Esq. | Kelley A. Cornish, Esq. |
| Philip J. Mohr, Esq. | Diane Meyers, Esq. |
| One West Fourth Street | Paul Weiss Rifkind Wharton & Garrison |
| Winston-Salem, NC 27101 | 1285 Avenue of the Americas |
| Telephone: (336) 721-3506 | New York, NY 10019 |
| | Telephone: (212) 373-6600 |

**The Official Committee of Unsecured Creditor Committee**

David W. Carickhoff, Esq.
Bank Rome LLP
1201 Market Street, Ste. 800
Wilmington, DE 19801
Telephone: (302) 425-6400

Michael Z. Brownstein, Esq.
Bank Rome LLP
The Chrysler Buildings
405 Lexington Avenue
New York, NY 10174
Telephone: (212) 885-5000

Michael B. Schaedle, Esq.
Blank Rome LLP
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Telephone: (215) 569-5500

**Office of the United States Trustee**

Jane M. Leamy, Esq.
Office of the United States Trustee
844 King Street, 2nd Floor
Wilmington, DE 19801
Telephone: (302) 573-6491

**Filing Fee Paid**:                    X Yes                    __No

IFP Motion Filed by Appellant?        __ Yes            __ No

Have Additional Appeals to the Same Order been Filed?        ___ Yes        X No
If so, has District Court assigned a Civil Action Number?

Additional Notes:
_____

__May 28, 2008____                                    ___Teresa Southerland_____
Date                                                                        Deputy Clerk


Bankruptcy Court Appeal (BAP) Number:___BAP-08-32__


**FOR USE BY U.S. BANKRUPTCY COURT**